Lavetta Susan WILLINGHAM,
Plaintiff,

v.

DEPARTMENT OF LABOR,
Defendant.

No. 2:06–CV–91.

United States District Court,
N.D. Texas,
Amarillo Division.

Feb. 9, 2007.

Lavetta Susan Willingham, Fritch, TX, Pro se.

## ORDER

ROBINSON, District Judge.

Lavetta Willingham, a *pro se* Plaintiff, has filed a claim under the Energy Employees Occupational Illness Compensation Program Act. She alleges that exposure to radiation while working at the Pantex Plant in Amarillo, Texas caused her breast and skin cancers. After an administrative adjudication, the Department of Labor denied Plaintiff's claim. She has filed suit for review of that decision. The Court grants the Department of Labor's motion for summary judgment.

## I. BACKGROUND

The Department of Energy has a nuclear facility in Amarillo, Texas named the Pantex Plant. Plaintiff worked there as a janitorial custodian or engineering technician from October 1991 to January 1998. On October 25, 1994, her job required that she remove material from bags of waste in a segregation room. Although the room was classified as a non-Radioactive Material Management Area, one of the bags that she opened contained a smaller bag bearing a radiation sticker. Personnel from the Radiation Safety Department found that the smaller bag, which Plaintiff had opened, contained radioactive material. This breached bag should not have been in a non-Radioactive Material Management Area.

Plaintiff was diagnosed with skin cancer on October 19, 1992 and breast cancer on

December 4, 1995. On June 24, 2001, she filed a Claim for Benefits under the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"). *See* 42 U.S.C.A. § 7384 *et seq.* (2006). The claim arises under Part B of the Act. *Id.* §§ 73841–7384w–1 (addressing claims that cancer was caused by exposure to radiation while working for the Department of Energy, its contractors, or its subcontractors). Plaintiff may receive benefits under Part B "only if" there is a 50% or greater probability that, as she claims, her exposure to radiation at Pantex caused her breast cancer or skin cancer. *See id.* §§ 73841(1)(B), 73841(9)(B)(i), 7384n(b), 7384s(a).

## A. HANDLING CLAIMS UNDER THE EEOICPA

The Department of Health and Human Services has set forth guidelines for calculating probability of causation. 42 C.F.R. § 81.0 *et seq.* (2006); *see* 42 U.S.C.A. § 7384n(c)(1). According to the guidelines, a computer-software program calculates the probability using information like the dose-response relationship[1] and the claimant's radiation exposure. *See* 42 C.F.R. §§ 81.4(g), 81.20. The calculation requires a reasonable estimate of the radiation dose that the claimant received. *Id.* § 81.6. This estimate comes from a dose reconstruction done by the National Institute for Occupational Safety and Health ("NIOSH"). *Id.* §§ 81.6, 82.1. A dose reconstruction characterizes the radiation environment to which an employee was exposed and translates the exposure into quantified radiation doses. *Id.* § 82.2. NIOSH uses a hierarchy of methods to do this, using data like results from group monitoring only when data like the claimant's dosimetry records—recorded measures of exposure to radiation—are unavail-

able or inadequate. *Id.* The data may come from any relevant source, including the Department of Energy, interviews with the claimant, and NIOSH's records. 42 C.F.R. §§ 82.10, 82.13. NIOSH uses reasonable scientific assumptions and default values when necessary. *Id.* §§ 82.2, 82.10(i).

After completing a draft of the dose-reconstruction report, NIOSH holds an interview with the claimant to review the dose reconstruction and the basis for the results. *Id.* § 82.10(1). The interview lets the claimant provide NIOSH with additional information that may affect the dose reconstruction. *Id.* Subject to this information and the draft's revision, the claimant will certify that NIOSH should close the record for dose reconstruction. *Id.* § 82.10(m). Upon receiving certification, NIOSH will send a final dose-reconstruction report to the Department of Labor to adjudicate the claim. *Id.* § 82.10(m)-(n).

A district office within the Department of Labor considers the dose-reconstruction report and other evidence before issuing a recommended decision on the claim. 20 C.F.R. § 30.305(a). This decision contains findings of fact, conclusions of law, and an acceptance or rejection of the claim. *Id.* § 30.306. The claimant may object to the findings or conclusions and request a hearing before the Department of Labor's Final Adjudication Branch. 20 C.F.R. § 30.310. "The hearing is an informal process." *Id.* § 30.314(c). During the hearing, the claimant may state arguments and present additional information that supports the claim. *Id.* After the hearing, the reviewer will issue a final decision or return the claim to the district office for further development and a new recommended decision. *Id.* §§ 30.316(b), 30.317.

---

1. "Dose-response relationship means a mathematical expression of the way that the risk of a biological effect (for example, cancer) changes with increased exposure to a potential health hazard (for example, ionizing radiation)." 42 C.F.R. § 81.4(c).

A claimant may request that the Final Adjudication Branch reconsider a final decision. *Id.* § 30.319(a). If the Final Adjudication Branch grants the request, then it will review the written record and issue a new final decision. *Id.* § 30.319(c).

## B. HANDLING OF PLAINTIFF'S CLAIM UNDER THE EEOICPA

NIOSH issued the dose reconstruction for Plaintiff's claim on December 22, 2003. NIOSH used Plaintiff's dosimetry records as the primary source for completing the dose reconstruction. The secondary sources used included NIOSH's records, technical bulletins published by the Oak Ridge Associated Universities,[2] and information obtained from an interview with Plaintiff. Based on this information and the dosimetry records, NIOSH estimated in the report that Plaintiff's employment at Pantex exposed her skin to 10.154 rem of radiation and her breast to 13.606 rem of radiation. On December 31, 2003, Plaintiff certified that the report identified all the information that she gave to NIOSH and that she did not have anything to add. Given the report's estimated dosage levels, the computer-software program calculated a 0.58% probability that exposure to radiation at Pantex caused her cancers.[3] Finding the probability to be less than 50%, and concluding that the reconstruction and calculations complied with the guidelines, the Department of Labor issued a recommended decision denying Plaintiff's claim on January 9, 2004.

Plaintiff objected to the decision on the grounds that she was exposed to an environment that could have caused cancer, that the incident in the segregation room was mishandled, and that some relevant information was not used in evaluating her claim. She requested an informal hearing, which the Final Adjudication Branch held on March 30, 2004. At the hearing, Plaintiff clarified the incident in the segregation room and stated that the breached bag sat in her work area for more than a month before the incident. The dose reconstruction had not factored in the length of time that the bag sat in the work area. The Final Adjudication Branch therefore vacated the recommended decision, ordering that NIOSH rework the dose reconstruction to account for this new information. NIOSH issued the reworked dose-reconstruction report on November 10, 2004. The report factored in the new information, which did not affect the estimated dosage levels: like the first dose-reconstruction report, NIOSH estimated in the reworked report that Plaintiff's employment at Pantex exposed her skin to 10.154 rem of radiation and her breast to 13.606 rem of radiation.

On December 8, 2004, Plaintiff again certified that the report identified all the information that she gave to NIOSH and that she did not have anything to add. The computer-software program calculated a 0.58% probability that exposure to radiation at Pantex caused her cancers. And for the same reasons as before, the district office issued a recommended decision denying Plaintiff's claim. Plaintiff objected to the decision and requested another informal hearing. At the hearing, she stated, among other things, that she does not understand why the reworked dose reconstruction factored in new information but

---

**2.** The dose-reconstruction report provides that the "following ORAU Technical Information Bulletins were also used in the completion of this dose reconstruction ...." The report does not define ORAU. But the reference seems to be to Oak Ridge Associated Universities, a consortium of academic institutions that work with the Department of Energy.

**3.** Specifically, there is a 0.01% chance that exposure to radiation at Pantex caused her skin cancer and a 0.57% chance that it caused her breast cancer.

found the same estimated dosage levels. On September 14, 2005, the Final Adjudication Branch issued a final decision denying Plaintiff's claim. It denied the claim because the dose reconstruction and calculations complied with the Department of Labor's guidelines, and there is not a 50% or greater probability of causation.

Plaintiff, through counsel, requested that the Final Adjudication Branch reconsider the final decision. She argued that NIOSH cannot accurately calculate her dosage levels without knowing the breached bag's exact contents. The Final Adjudication Branch denied the request on December 15, 2005 because Plaintiff failed to provide a sufficient basis for reconsideration. The representative who denied the request stated in the Notice of Denial that Plaintiff was routinely monitored for exposure to radiation while working at Pantex, and these dosimetry records show that the incident in the segregation room did not expose her to detectable levels of radiation.

## II. DISCUSSION

Plaintiff, no longer represented by counsel, has filed this suit for review of the Department of Labor's administrative decision to deny her claim for benefits. The Department of Labor has filed a motion for summary judgment that the decision was neither arbitrary nor capricious.

 Generally, this Court may grant summary judgment if the record shows that the case has no genuine issue of material fact and that "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). But reviewing an administrative decision on summary judgment calls for a modified standard: whether the agency acted appropriately given the standards of review set forth by the

Administrative Procedure Act or the statute authorizing the agency's action. *Castillo v. Army & Air Force Exch. Serv.*, 849 F.2d 199, 202–03 (5th Cir.1988); *Lodge Tower Condo. Ass'n v. Lodge Properties, Inc.*, 880 F.Supp. 1370, 1374 (D.Colo.1995), *aff'd*, 85 F.3d 476 (10th Cir.1996) ("[T]he issue is not whether the material facts are disputed, but whether the agency properly dealt with the facts."). Here, the Administrative Procedure Act applies because Part B of the EEOICPA does not set forth standards of review. 42 U.S.C.A. §§ 7384l–7384w–1; *see Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 904 (5th Cir.1983). This requires the Court to review whether the Department of Labor acted within the scope of its authority, followed the procedural requirements, and made an appropriate decision as judged under either the substantial-evidence or arbitrary-and-capricious standards. *Mississippi Comm'n on Natural Res. v. Costle*, 625 F.2d 1269, 1274–75 (5th Cir.1980) (citing 5 U.S.C.A § 706 (2006)).

 The Department of Labor acted within the scope of its authority because it may evaluate claims for benefits under the EEOICPA. *See* 42 U.S.C.A. §§ 7384n(b)-(c)(1); 20 C.F.R. §§ 30.1–30.2. And the procedural requirements for handling claims under the EEOICPA were followed.[4] The core issue, then, is whether the Department of Labor made an appropriate decision as judged under the substantial-evidence standard or the arbitrary-and-capricious standard. Under the substantial-evidence standard, a court must determine whether substantial evidence supports an administrative decision. 5 U.S.C.A. § 706(2)(E). This standard applies if the statute that authorizes an agency's action requires an administrative hearing designed to produce a record that

---

4. Plaintiff has not disputed whether the Department of Labor exceeded its authority or failed to follow the procedural requirements.

will provide the action's basis. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Castillo v. Army & Air Force Exch. Serv.,* 849 F.2d 199, 203 n. 1 (5th Cir.1988). Under the arbitrary-and-capricious standard, a court must determine whether an administrative decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C.A. § 706(2)(A). This standard applies if an informal hearing is held or required by regulation. *Camp v. Pitts,* 411 U.S. 138, 140–41, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Castillo,* 849 F.2d at 203 n. 1.

 The Department of Labor's regulations permit an informal hearing—when requested by a claimant—on objections to a recommended decision. But the EEOICPA does not require a hearing designed to produce a record that will provide the basis for deciding whether to accept a claim. The arbitrary-and-capricious standard therefore applies. *See Camp,* 411 U.S. at 140–41, 93 S.Ct. 1241 (applying this standard when no "formal hearings were required by the controlling statute or guaranteed by the applicable regulations, although the latter provided for hearings when requested and when granted at the discretion of the Comptroller"). The Court must limit review to the administrative record in applying this standard to the Department of Labor's decision. *Id.* at 142, 93 S.Ct. 1241. A presumption of validity attaches to that decision, and Plaintiff bears the burden to prove that it was arbitrary or capricious. *Miss. Hosp. Ass'n, Inc. v. Heckler,* 701 F.2d 511, 516 (5th Cir.1983). "A decision is arbitrary or capricious only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dept. of Agric.,* 991 F.2d 1211, 1215 (5th Cir.1993) (internal quotations omitted). A decision is not arbitrary or capricious if the agency considers the relevant factors and "articulates a rational relationship between the facts found and the choice made." *Louisiana ex rel. Guste v. Verity,* 853 F.2d 322, 327 (5th Cir.1988).

Answering one question resolves Plaintiff's entitlement to benefits under the EEOICPA: is there at least a 50% probability that her exposure to radiation while working at Pantex caused her cancers? In the process of answering this question, NIOSH considered the relevant information and estimated Plaintiff's exposure to radiation at Pantex. The calculations based on those estimates established a 0.58% probability that the exposure caused her cancer. The Department of Labor denied Plaintiff's claim because the probability falls short of the 50% prerequisite to benefits. Given this clear prerequisite, the denial was neither arbitrary nor capricious.

### III. CONCLUSION

Accordingly, the Court grants the Department of Labor's motion for summary.

IT IS SO ORDERED.